1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christina N Chadwick,<br><br>Plaintiff,<br><br>v.<br><br>Universidad Interamericana de Puerto Rico Incorporated,<br><br>Defendant. | No. CV-18-00377-TUC-RM<br><br>**ORDER** |

Pending before the Court is Plaintiff Christina Chadwick's Application for Issuance of Temporary Restraining Order. (Doc. 8.) On August 10, 2018, the Court heard oral argument on the Application and took the matter under advisement so that Defendant Universidad Interamericana de Puerto Rico Incorporated ("Interamericana") could file a response. (Docs. 10, 11.) Interamericana filed its Response on August 20, 2018. (Doc. 12.) Plaintiff filed a Reply. (Doc. 13.) Given the briefing schedule and nature of Plaintiff's requests, the Court construes the Application as a motion for preliminary injunction. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp*, 174 F.3d 1036, 1043 (9th Cir. 1999). For the following reasons, Plaintiff's request for preliminary injunctive relief will be denied.

**I.  Background**

**A.  Prior Litigation**

In August 2015, Plaintiff enrolled in the School of Optometry at Interamericana. (Doc. 8-1, ¶ 7.) On July 7, 2017, Interamericana dismissed Plaintiff from the program.

(*Id.* ¶ 10.) Plaintiff appealed her dismissal on July 18, 2017, and, after the appeals committee failed to timely respond, filed a lawsuit in this Court on August 2, 2017. (*Id.* ¶ 11.) In her appeal, Plaintiff advised Interamericana that she has an emotional/mental disability for which she receives psychiatric care. (*Id.* ¶ 12.) Plaintiff voluntarily dismissed the lawsuit after Interamericana partially granted her appeal and allowed her to take a reduced course load. (*Id.* ¶¶ 11, 14–15.)

Following the Fall 2017 semester, Plaintiff sued Interamericana again, alleging that Interamericana acted contrary to its academic policy and discriminated against her based on her mental disability. (*Id.* ¶ 16.) On February 10, 2018, Plaintiff and Interamericana resolved the action by entering into a Confidential Settlement Agreement and General Release. (*Id.* ¶ 17.)

### B. Requests for Accommodations

In February 2018, Plaintiff submitted a request for reasonable accommodations, signed by her treating physician, Dr. Richard Barnes, requesting that, prior to class, she be provided with "complete power point slide presentations prepared by professors." (Doc. 8-1, ¶ 35.) Despite her request, Interamericana refuses to provide her with full PowerPoint presentations, instead providing "fill-in-the-blank notes," or "skeleton" presentations. (*Id.* ¶ 36; Doc. 12-1, ¶ 16.) As was made clear during the hearing, Plaintiff is requesting completed "skeleton" presentations, in addition to the professor's notes. (*See* Doc. 8-2.)

In Spring 2018, Plaintiff requested that tutors be made available to assist her with her studies. (Doc. 8-1, ¶ 37.) According to Plaintiff, the Dean of Student Affairs promised to find tutors, but never followed through on that promise. (*Id.*) Plaintiff submits a letter executed by Dr. Barnes on August 1, 2018 (two days before this lawsuit was filed), apparently directed to Interamericana, which states that Plaintiff would benefit from the foregoing accommodations. (Doc. 8-2.)

### II. Standard of Review

"A preliminary injunction is an extraordinary remedy never awarded as of right."

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). There are four requirements for a preliminary injunction: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) an injunction is in the public interest. *Id.* at 20. The relief sought by Plaintiff requires affirmative conduct by Interamericana. "Such 'mandatory preliminary relief' is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (citing *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)).

The Ninth Circuit follows a "sliding scale" approach to preliminary injunctions. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a weaker showing as to the likelihood of success on the merits may be offset by a stronger showing with respect to the balance of the equities. *Id.* at 1131–32. If the moving party is unable to establish a likelihood of success on the merits, a preliminary injunction may still be granted if (1) there are serious questions going to the merits, i.e., substantial, difficult, and doubtful questions on which the plaintiff has a fair chance of success; (2) the balance of hardships tips "sharply" in the plaintiff's favor; and (3) the other *Winter* requirements, i.e., irreparable harm and in the public interest, are met. *Id.* at 1135.

### III. Discussion

Plaintiff requests a preliminary injunction ordering Interamericana to:

> (i) immediately allow Ms. Chadwick to enroll in DVT2 and classes of her choosing for the Fall 2018 semester; (ii) provide her with all Powerpoint slide presentations before each of her classes; (iii) provide her with tutor [sic] and/or allow faculty members to tutor her in all of her classes; (iv) correct the DVT1 grade to a "D" or a "C"; and (v) keep Ms. Chadwick's financial aid eligibility intact[.]

(Doc. 8 at 13.) Plaintiff clarifies that her first, fourth, and fifth requests are no longer ripe for review. (Doc. 13 at 2.) Those requests will be denied without prejudice, leaving only Plaintiff's request for accommodations under the Rehabilitation Act.

### A. Likelihood of Success on the Merits

A claim under Section 504 of the Rehabilitation Act requires proof that (1) the plaintiff is disabled within the meaning of the Act; (2) the plaintiff "is 'otherwise qualified' to remain a student at the . . . [s]chool, i.e., she can meet the essential eligibility requirements of the school, with or without reasonable accommodation"; (3) the plaintiff was excluded from participating in, was denied the benefits of, or was subjected to discrimination under the program "solely by reason of" her disability; and (4) the school receives federal financial assistance. *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999); 29 U.S.C. § 794(a); 34 C.F.R. §§ 104.3(l)(3), 104.4(a). There appears to be no dispute that the fourth element is satisfied. Although there appears to be a dispute regarding the first element, the Court accepts Dr. Barnes's diagnosis that Plaintiff has a mental disability.

#### 1. Tutoring

The Office for Civil Rights ("OCR") is the enforcement agency within the Department of Education that is responsible for ensuring federally funded schools comply with the Rehabilitation Act. 20 U.S.C. §§ 3413(a), 3441(a)(3); 34 C.F.R. § 104.1. The OCR enforces the Rehabilitation Act through rules found in the Code of Federal Regulations, 34 C.F.R. §§ 104.1–104.61, and its formal interpretations of the implementing regulations are to be accorded substantial deference, *see Neal v. Board of Trustees of California State Universities*, 198 F.3d 763, 770–72 (9th Cir. 1999).

Under the Rehabilitation Act, federally funded postsecondary schools "need not provide attendants, individually prescribed devices, readers for personal use or study, or other devices or services of a personal nature." 34 C.F.R. § 104.44(d)(2). The OCR has concluded that the foregoing language relieves postsecondary schools from the obligation to provide tutors to disabled students, at least where tutors are also not provided to non-disabled students. *See* 34 C.F.R. § 104.4(b)(1)(i)–(iii) (schools may not deny disabled students services that are offered to non-disabled students or offer disabled students services that are less effective than services offered to non-disabled students).

In an analogous case, *Oregon State University*, 5 NDLR (LRP) 19, 1993 NDLR (LRP) LEXIS 1323 (OCR 1993), a student alleged that the university discriminated against him on the basis of disability by failing to provide tutoring. The OCR explained that "[b]ecause tutoring is associated more closely with individual study aid, Section 504 does not require the provision of tutoring as a necessary academic adjustment." *Id.* Since the student failed to provide information showing he was treated differently than non-disabled students with respect to the provision of tutoring services, the "OCR conclude[d] that the University's provision of tutoring services was consistent with Section 504 requirements." *Id.*; *see State Univ. of N.Y., Alfred State Coll.*, 2 NDLR (LRP) 102, 1991 NDLR (LRP) LEXIS 1104 (OCR 1991) (reaching same conclusion on similar facts); *S. Seattle Cmty. Coll. (WA)*, 4 NDLR (LRP) 19, 1993 NDLR (LRP) LEXIS 1001 (OCR 1993) (explaining that college need not provide tutoring under § 104.44(d)(2)); *Lincoln Mem'l Univ.*, 33 NDLR 227, 2006 NDLR (LRP) LEXIS 500 (OCR 2006) (same).

There are also federal court cases which, although similarly not binding, conclude for the same reason that postsecondary schools do not need to provide tutoring services. *See Bevington v. Wright State Univ.*, 23 F. App'x 444, 445 (6th Cir. 2001) ("The Bevingtons state that they are entitled to a tutorial program. However, such a program is not required." (citing 34 C.F.R. § 104.44(d)); *Reichert v. Elizabethtown Coll.*, No. 10–2248, 2012 WL 1205158, at *11 (E.D. Pa. Apr. 10, 2012) (explaining that college need not provide tutoring under § 104.44(d)(2)); *Carlson v. Carroll Univ.*, No. 09–C–551, 2011 WL 5921445, at *13 (E.D. Wis. Nov. 28, 2011) (same).

The foregoing authority persuades the Court that federal law relieves Interamericana of the obligation to provide tutoring as an accommodation for disabled students; therefore, she is not likely to prevail on this aspect of her claim. In her Reply, Plaintiff abandons her request that Interamericana be ordered to provide tutoring and turns her attention to her alternative request that Interamericana allow its faculty to tutor her. The Court disagrees the distinction between *providing* faculty tutors and *allowing*

faculty to tutor is one of significance in this context. Federal law requires Interamericana to treat disabled and non-disabled students the same with respect to tutoring services; Plaintiff does not allege that Interamericana treats disabled students differently than non-disabled students, and the only evidence in the record shows that Interamericana provides tutors to all students who request tutoring, if tutors are available. (Doc. 12-1, ¶ 20; Doc. 13-1.)

In any event, Plaintiff has not provided authority showing that the Rehabilitation Act is concerned with whether a school should permit voluntary student-professor arrangements.[1] Consequently, she has not shown she is likely to prevail on that claim.

### 2. PowerPoint Presentations and Professor's Notes

Plaintiff focuses almost exclusively on the second element and argues that her request for completed "skeleton" presentations and professor's notes are reasonable accommodations that do not alter Interamericana's academic program or standards. (Doc. 8 at 9–10.) For support, she cites *Wong v. Regents of University of California*, 192 F.3d 807, 818 (9th Cir. 1999), where the Ninth Circuit explained that, if a plaintiff can show the existence of a reasonable accommodation, the burden then shifts to the school to show that the accommodation is unreasonable because it fundamentally alters the program or standards. That panel's review focused only on the second element, however; as the Ninth Circuit recognized years later when reviewing the case a second time, it was still the plaintiff's burden to establish *all* elements. *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1058, 1061 (9th Cir. 2005) (noting that plaintiff was explicitly told he must prove all four elements and explaining that defendant's decision to contest only the second element on summary judgment did not constitute a permanent waiver of

---

[1] Plaintiff cites *McInerney v. Rensselaer Polytechnic Inst.*, 977 F. Supp. 2d 119 (N.D.N.Y. 2013), and *Doe v. Skidmore College*, 1:17-CV-1269 (LEK/CFH), 2018 WL 3979588 (N.D.N.Y. Aug. 20, 2018). Neither case involved a claim that schools must make faculty available for tutoring as a reasonable accommodation for disabled students. Furthermore, Plaintiff is incorrect that *McInerney* stands for the proposition that failure to provide tutoring to a disabled student violates the Rehabilitation Act, if there is evidence of the denial of other accommodations. Next, it is not clear at all why Plaintiff relies on *Skidmore*. That school willingly provided tutoring services (although it was not required to do so), and tutoring is mentioned only in passing as something that *was not* at issue. *Skidmore*, 2018 WL 3979588, at *1–2.

defendant's challenges to all other elements).

The third element requires proof that the plaintiff, "solely by reason of her or his disability, [was] excluded from the participation in, [was] denied the benefits of, or [was] subjected to discrimination under the program . . . ." 29 U.S.C. § 794(a). "The causal standard for the Rehabilitation Act is . . . strict[], demanding that [plaintiff] show that she was denied services 'solely by reason of' her disability." *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1049 (9th Cir. 2009) (citing 29 U.S.C. § 794(a)); *see Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*, 977 F. Supp. 2d 1058, 1062 (D. Or. 2013) ("Because of the word 'solely,' the Rehabilitation Act . . . has consistently been interpreted to require a 'but for' standard of causation.").[2]

Plaintiff has not shown that her request for accommodations was denied "solely by reason of" her disability; therefore, she has not shown a likelihood of success on the merits or that there are serious questions on which she has a fair chance of success. She does not address the causation element except to state that there is an "obvious" nexus between the denial of accommodations and Interamericana's allegedly retaliatory request that she undergo an independent medical examination. However, the present record indicates that Interamericana's request was not based on the fact or perception that Plaintiff is disabled. Rather, it appears it was based either on the possibility that she *is not* disabled, *see Weinreich v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976, 979 (9th Cir. 1997), or that her requested accommodations are mere personal preferences that are not tied to an informed diagnosis based on full clinical data.

On March 16, 2018, Plaintiff emailed Interamericana a letter signed by Dr. Barnes, which states: "[M]y professional recommendation is that a reasonable accommodation should made [sic] to allow Ms. Chadwick to reside in on-campus housing for the duration of her studies" so as to "minimize [her] anxiety effects." (Doc. 12-2 at 3.) The email

---

[2] *See Martin*, 560 F.3d at 1048–49 (comparing the Rehabilitation Act's strict causal standard to the more lenient standard of the Americans with Disabilities Act, which requires only that discrimination be a "motivating factor"); *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013) (same).

- 7 -

chain shows that Plaintiff (or someone she knows) drafted the letter and that Plaintiff directed Dr. Barnes to copy it verbatim onto his letterhead—which he did, typographical error and all—and sign it. (*See id.* at 2 (Plaintiff: "This is a letter that I need Dr. Barnes to sigh [sic] with his letter head [sic].").) Noticing that Plaintiff, rather than Dr. Barnes, appeared to determine what was a reasonable accommodation for her anxiety, Interamericana requested an independent medical evaluation. (Doc. 12 at 8 n.9; Doc. 13-3.)

Given the foregoing, Interamericana's concern (right or wrong) was not unreasonable. To be clear, the Court is not rejecting Dr. Barnes's diagnosis. The Court merely finds that, on the present record, Plaintiff is not likely to prove that the denial of accommodations occurred "solely" because she is disabled.

### B. Irreparable Harm, Balance of Hardships, and Public Interest

"A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (emphasis in original) (quoting *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)). Additionally, "[w]hen ruling on a preliminary injunction, 'a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Arc of Cal. v. Douglas*, 757 F.3d 975, 991 (9th Cir. 2014) (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987)).

Plaintiff argues that she will lose educational and professional opportunities and suffer emotional harm if the accommodations are not provided. She also argues that the balance of hardships tips in her favor for the same reasons, and that Interamericana would suffer no discernible burden from providing the accommodations. Finally, she argues that the public interest favors granting reasonable accommodations to disabled students. Assuming that Plaintiff is legally entitled to the requested accommodations, the Court agrees with her analysis of these three factors. As explained above, however, the Court

finds that Plaintiff is not likely to prevail on her Rehabilitation Act claims.  Therefore, the public interest does not favor requiring Interamericana to provide accommodations that are not legally required.  Furthermore, Plaintiff has not shown that any harm resulting from the denial of the requested accommodations is tied to wrongful conduct on Interamericana's part; thus, any hardship Interamericana would suffer from providing the accommodations outweighs Plaintiff's harm.

**IV.    Conclusion**

Preliminary injunctive relief is an extraordinary remedy that is more difficult to obtain where, as here, the relief sought requires affirmative conduct.  *Winter*, 555 U.S. at 24; *Dahl*, 7 F.3d at 1403.  Plaintiff has failed to show that the facts and law clearly support her requests.  Consequently, her Application will be denied.

**IT IS ORDERED** that the Application for Issuance of Temporary Restraining Order (Doc. 8), which is construed as a motion for preliminary injunction, is **denied**.

**IT IS FURTHER ORDERED** that, within **ten (10) days** of the filing date of this Order, Defendant shall answer or otherwise respond to the First Amended Complaint (Doc. 16).

Dated this 19th day of September, 2018.

_____
Honorable Rosemary Márquez
United States District Judge